UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MD SPINE SOLUTIONS, LLC d/b/a MD LABS, <br><br> Plaintiff, <br><br> v. <br><br> UNITEDHEALTH GROUP, INC., et al., <br><br> Defendants. | ) ) ) ) ) ) ) 21 C 3435 ) ) ) ) ) ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants' Motion to Dismiss Plaintiff MD Spine Solutions d/b/a MD Labs' ("MD Labs") Complaint. For the following reasons, the Court grants the Motion.

## BACKGROUND

For the purposes of this Motion, the Court accepts as true the following facts from the Complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in MD Labs' favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

MD Labs is a clinical laboratory that performs specialized urine drug testing to help physicians monitor their patients' prescribed medication and other drug use. Defendants are related health insurance companies, which MD Labs says are

collectively one of the largest providers of health insurance in the United States. MD Labs brings this action seeking to recover over $1 million for lab services provided to members of Defendants' insurance plans.

MD Labs says treating physicians decide which tests to perform and submit a requisition form to MD Labs verifying the testing is medically necessary. The patients have insurance from Defendants to cover testing costs and assign their insurance benefits to MD Labs. MD Labs then files a claim with Defendants for payment. MD Labs admits it does not have a contract with Defendants for members with Medicare Advantage or Medicaid plans, making it an "out-of-network" provider. But MD Labs says the government-sponsored plans allow members to receive services from out-of-network providers when the provider offers specialized services, or a physician decides an out-of-network provider best serves the patient. In those situations, Defendants pay for services at statutorily prescribed rates.

MD Labs alleges Defendants conducted two audits of Medicare Advantage and Medicaid claims in Tennessee in February and November 2019. The audits revealed over 1,000 claims were not accurate or lacked supporting documentation for the services billed. Thus, Defendants determined they were wrongfully overcharged by over $1 million. Defendants informed MD Labs of the overpayments and recovered the overpayments from later-filed claims, even though MD Labs disputed, and continues to dispute, those findings. MD Labs alleges the audits were done in bad faith,

are statistically invalid, and violated Defendants' policies and policies of the Centers for Medicare and Medicaid Services ("CMS").

Based on these allegations, MD Labs filed a five-count complaint, asserting: breach of contract as contract assignees (Count I); breach of contract as third-party beneficiaries (Count II); unjust enrichment and quantum meruit (Count III); bad faith (Count IV); and conversion (Count V). Defendants now move to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to raise its right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

3

"[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Defendants direct arguments at the Complaint as a whole and at each individual claim. We begin with the general arguments and then turn to the individual arguments.

### I. General Arguments

Defendants first argue MD Labs' claims are expressly preempted by the Medicare Act, 42 U.S.C. § 1395 *et seq*. Express preemption occurs "when Congress clearly declares its intention to preempt state law." *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 646 (7th Cir. 2019). The Medicare Act states in pertinent part, "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage ("MA")] plans which are offered by MA organizations under this part." 42 U.S.C. § 1395w-26(b)(3). The scope of Medicare Act preemption is "very broad," *Mayberry v. Walgreens, Co.*, 2017 WL 4228205, at *2 (N.D. Ill 2017), and preempts both state common law and statutory law, *Rudek v. Presence Our Lady of Resurrection Med. Ctr.*, 2014 WL 5441845, at *4 (N.D. Ill. 2014).

MD Labs argues the preemption argument is premature and should be addressed on a motion for summary judgment. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) (noting "[p]reemption is an affirmative defense" and "pleadings need

4

not anticipate or attempt to circumvent affirmative defenses"). But dismissal based on an affirmative defense is appropriate when a plaintiff pleads itself out of court by alleging all the ingredients of an impenetrable defense. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

Here, the Complaint makes clear that any claims based on the first audit are preempted by the Medicare Act. As alleged in the Complaint:

> In or around February 2019, however, [Defendants] conducted the first of two sample Audits that are the subject of this Complaint: Audit No. 20524980. This audit reviewed a small number of UnitedHealthcare Community Plan of Tennessee claims paid from 07/11/2015-06/09/2017. This Plan corresponds to UHC's *Medicare Advantage* product lines in Tennessee.

Dkt. # 1, at ¶ 10 (emphasis added). The Complaint further makes clear that MD Labs seeks to adjudicate, at least in part, whether Defendants followed CMS rules for audits. *See, e.g.*, *id.* at ¶ 18 (alleging Defendants violated Section 8.4.5.1 of the CMS Medicare Program Integrity Manual). Therefore, MD Labs' claims based on the first audit are clearly preempted by the Medicare Act's broad preemption provision. *See Mayberry*, 2017 WL 4228205, at *2 (dismissing state law claims as preempted by the Medicare Act because resolution of the claims hinged on interpretations of CMS guidelines and Medicare Act regulations).

However, we cannot say the claims based on the second audit are preempted. MD Labs alleges this audit involved both Medicare Advantage and Medicaid plans. Dkt. # 1, at ¶11. As such, we do not know how many plans, if any, were Medicare

5

Advantage plans and are therefore preempted by the Medicare Act. Therefore, this issue must be resolved at a later stage following discovery.

Defendants also argue the Complaint must be dismissed because it is an improper group pleading. "'Group pleading' does not violated Federal Rule of Civil Procedure 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims." *Berkeley\*IEOR v. Teradata Operations, Inc.*, 2019 WL 1077124, at \*8 (N.D. Ill 2019). MD Labs alleges Defendants are related corporate entities that share employees and each played a role in the audits. Thus, these allegations are specific enough for Defendants "to understand they are specifically implicated." *Sanders v. JGWPT Holdings, Inc.*, 2016 WL 4009941, at \*10 (N.D. Ill. 2016); *see also Receivership Mgmt., Inc. v. AEU Holdings, LLC*, 2019 WL 4189466, at \*10 n.15 (N.D. Ill. 2019) (noting group pleading is permissible if it is plausible all defendants plausibly committed a certain act).

**II.     Count I**

Defendants next argue Count I must be dismissed because MD Labs lacks prudential standing to assert a breach of contract claim as an assignee of the insurance plan benefits. More specifically, Defendants argue the Complaint does not contain enough facts showing the assignment of contractual rights.

"The prudential standing consideration requires that, in general, the plaintiffs must assert their own legal rights and interests, and cannot rest their claims to relief on the legal rights or interests of third parties." *MSP Recovery Claims, Series LLC v.*

6

*Mallinckrodt ARD Inc.*, 2019 WL 11658793, at *2 (N.D. Ill. 2019) (cleaned up). Thus, "the injury on which the plaintiff founds his suit [must be] derivative from the injury suffered by the defendant's immediate victim." *Id.* at n.6. "Because prudential standing does not implicate a court's subject-matter jurisdiction, arguments regarding lack of prudential standing are properly evaluated under the rubric of a motion for failure to state a claim under Rule 12(b)(6)." *MAO-MSO Recovery II, LLC v. Allstate Ins. Co.*, 2018 WL 1565583, at *3 (N.D. Ill. 2018).

In *MSP Recovery* and *MAO-MSO Recovery II*, the courts found the plaintiffs insufficiently alleged facts to establish prudential standing because the complaints lacked allegations of "the identity of the MAO(s) that assigned the rights; which Plaintiff received assignments from which MAO(s); the date, format, or any other characteristic of the assignment; the actual rights assigned; or whether those assignments include claims against the particular Defendants named in the complaint." *MSP Recovery*, 2019 WL 11658793, at *3 (quoting *MAO-MSO Recovery II*, 2018 WL 1565583, at *4). Here, while MD Labs alleges its patients assigned their rights under the insurance policies and MD Labs is entitled to recover benefits due to the insured patients, *see* Dkt. # 1, ¶ 79, we still believe the allegations are slightly lacking. The Complaint only very broadly alleges the patients assigned MD Labs their insurance plan benefits, but does not state the "actual rights assigned." *MSP Recovery*, 2019 WL 11658793, at *3. And MD Labs does not allege how the benefits were assigned—

7

written, orally, or in some other manner. *See id.* Accordingly, we dismiss Count I with leave to amend.

## III. Count II

Similarly, Defendants argue Count II must be dismissed because MD Labs lacks prudential standing to assert a breach of contract claim as a third-party beneficiary. We agree for several reasons. First, under Illinois law[1]:

> Whether someone is a third-party beneficiary depends on the intent of the contracting parties, as evidenced by the contract language. It must appear from the language of the contract that the contract was made for the direct, not merely incidental, benefit of the third person. Such an intention must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs. If a contract makes no mention of the plaintiff or the class to which he belongs, he is not a third-party beneficiary of the contract. The plaintiff bears the burden of showing that the parties to the contract intended to confer a direct benefit on him.

*Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*, 2017 IL App (1st) 160756, ¶ 46 (cleaned up). The Seventh Circuit noted, "Illinois has made it very difficult to prove intent to benefit the third party." *Quinn v. McGraw-Hill Cos.,* 168 F.3d 331, 334 (7th Cir. 1999). To overcome the presumption that a contract applies only to its signatories, MD Labs must point to language in the policy and the circumstances surrounding its execution showing "practically an express declaration" that it was an intended

---

[1] The parties do not address the choice of law issue for this claim and both parties mostly cite to cases applying Illinois law. Thus, the Court analyzes it under Illinois law. However, the Court notes Tennessee law and Nevada law appear similar to Illinois law. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 68–69 (Tenn. 2001); *Canfora v. Coast Hotels and Casinos, Inc.*, 121 P.3d 599, 605 (Nev. 2005).

beneficiary. *Linda Constr. Inc. v. Allied Waste Indus.*, 2017 WL 1196889, at *10 (N.D. Ill. 2017). Here, while it broadly paraphrases the policy, MD Labs did not attach the policy (or policies) or quote the policy language and, thus, the Court cannot infer whether the policy plausibly supports MD Labs' argument that it was an intended third-party beneficiary.

Second, "medical providers are generally not third party beneficiaries of insurance policies . . . [except] when (1) the policy expressly identifies medical providers as third party beneficiaries . . . or (2) the policy provides for payment directly to medical providers." *Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1022 (2009). But again, MD Labs only paraphrases Defendants' obligations under the policy and the Court cannot infer whether the parties to the policies intended for MD Labs to be a third-party beneficiary. Accordingly, Count II is dismissed without prejudice.

## IV. Count III

Next, Defendant argue Count III, the quasi-contractual claims, must be dismissed because MD Labs alleges the existence of a contract. Though MD Labs argues Count III is plead in the alternative, which it is allowed to do under the Federal Rules, MD Labs incorporated by reference the existence of a contract. Thus, this allegation would defeat MD Labs' quasi-contractual theories. *See Mashallah v. West Bend Mut. Ins. Co.*, 2021 WL 5833488, at *7–8 (7th Cir. 2021) (noting a plaintiff cannot plead the existence

9

of a contract in a claim for quasi-contractual relief). This can be easily remedied with an amended complaint and MD Labs is given leave to do so.

## V. Count IV

Defendants argue Count IV must be dismissed because it fails to state a claim for bad faith under Illinois law and, even if it did, Section 155 of the Illinois Insurance Code is the exclusive remedy for bad faith by an insurer. MD Labs counters by arguing Tennessee or Nevada law is more likely to apply and it states a claim under the laws of those states.

To state a bad faith claim in Nevada, a plaintiff must allege that the insurer acted unreasonably and acted with knowledge that there was no reasonable basis for its conduct. *Guaranty Nat'l Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). To state a bad faith claim under Tennessee law, a plaintiff must allege:

> (1) that the policy became due and payable under its terms; (2) the insured made a formal demand for payment; (3) sixty days passed from the date of making the demand, unless the insurer refused to pay the claim prior to the passage of sixty days; and (4) the refusal to pay was in bad faith.

*Taylor v. Standard Ins. Co.*, 2009 WL 113457, at *5 (W.D. Tenn. 2009).

Here, MD Labs' bad faith claim fails under both states' laws. First, while MD Labs alleges Defendants acted unreasonably, it does not allege any facts showing Defendants acted with knowledge that there was no reasonable basis to recoup the alleged overpayments. Thus, its claim fails under Nevada law. Second, the claims fails under Tennessee law because, although it alleges it appealed the recoupment decision,

10

MD Labs fails to allege it issued a formal demand for payment. *See PacTech, Inc. v. Auto-Owners Ins. Co.*, 292 S.W.3d 1, 9 (Tenn. Ct. App. 2008) (noting a plaintiff must issue a formal demand for payment because the insurer is "entitled to notice of the claim for bad faith and a period in which to reflect upon the consequences of its failure to pay."); *see also Spirit Holdings, LLC v. Auto-Owners Mut. Ins. Co.*, 2021 WL 5150683, at *3 (E.D. Tenn. 2021) (relying on *PacTech* and granting summary judgment to insurer based on the failure to issue a formal demand for payment). Therefore, Count IV is dismissed with leave to amend.

## VI. Count V

Finally, Defendants argue Count V, the conversion claim, fails because MD Labs again failed to properly plead in the alternative and incorporated all preceding paragraphs of the Complaint. Defendants also argue the conversion claim is duplicative of all prior counts because it seeks the same damages. We agree the conversion improperly plead in the alternative and is duplicative. Though MD Labs creatively redefines the over $1 million recouped by Defendants as the "Converted Funds," MD Labs' conversion claim is based on the same facts and is seeking the exact same damages as it does in its contract claims. The conversion claim is therefore dismissed as duplicative. *See All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 865–66 (7th Cir. 1999) (discussing the "economic loss doctrine" that prevents duplicative tort and contract claims); *Richard v. Watkins*, 2019 WL 6487379, at *4 (N.D. Ill. 2019)

(dismissing conversion claim because "[t]he damages Richard seeks via this claim are the same as those she seeks in her first three claims").

## CONCLUSION

For the reasons stated above, the Court grants Defendants' Motion to Dismiss (Dkt. # 18). MD Labs is given 21 days to file an amended complaint consistent with this Order. Defendants have 21 days thereafter to respond to the amended complaint. Telephonic status set for 3/3/2022 at 10:00 a.m. It is so ordered.

Dated: 01/13/2022

_____
Charles P. Kocoras
United States District Judge